1

2

3

4

5

6 **IN THE UNITED STATES DISTRICT COURT**

7 **FOR THE DISTRICT OF ARIZONA**

8

9 Daniel Patterson,                                    No. CV-13-01779-TUC-RM (EJM)

10                          Plaintiff,         **REPORT AND**
                                               **RECOMMENDATION**
11 v.

12 Pima County Sheriff's Department, et al.,

13                          Defendants.

14

15          Before the Court is a Motion to Dismiss Defendants Pima County Sheriff's Office

16 and Sheriff Clarence Dupnik as parties to this action pursuant to Fed. R. Civ. P. 12(b)(6).

17 (Doc. 8). Also before the Court is a Motion to Dismiss the complaint against Defendants

18 City of Tucson and Michael Rankin pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 9).

19          Pursuant to the Rules of Practice of this Court, this matter was referred to the

20 undersigned for a Report and Recommendation. (Doc. 15).

21          In this § 1983 action, Plaintiff Daniel Patterson alleges Defendants violated his

22 civil rights when they served him with civil process and charged him with four

23 misdemeanors while he was serving as an active member of the Arizona legislature.

24 Patterson claims he was immune from civil process under Arizona's legislative immunity

25 statute. Ariz. Const. art. IV, pt. 2, § 6.

26          Because oral argument would not aid the Court's decisional process and the

27 briefing is adequate, Defendants City of Tucson and Michael Rankin's request for oral

28 argument will be denied. *See generally Mahon v. Credit Bur. of Placer County, Inc.*, 171

F.3d 1197, 1200 (9th Cir. 1999).

Both motions have been fully briefed by the parties. For the reasons stated below, the Magistrate Judge recommends that both motions to dismiss be granted. First, the Pima County Sheriff's Office is a non-jural entity incapable of being sued. Second, the complaint fails to allege a cause of action against Sheriff Clarence Dupnik in either his individual or official capacities because there is no allegation of his personal involvement or of an official government policy or practice. Third, Michael Rankin is entitled to absolute prosecutorial immunity because the charging decision falls within the scope of official prosecutorial functions. Finally, the complaint fails to state a valid § 1983 claim against the City of Tucson or Rankin because it fails to allege an official policy or practice that lead to the deprivation of Plaintiff's rights.

## I.   Factual and Procedural Background

Plaintiff Daniel Patterson filed this action on November 14, 2013, alleging claims under 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. (Doc. 1). Patterson is a former member of the Arizona Legislature.

Patterson's claims concern an alleged domestic violence incident that took place on February 24, 2012. *Id*. at 4, ¶ 13. Patterson states that after he called Tucson Police Department officers to his home, no arrests were made, and the officers informed the media that no charges would be filed. *Id*. at ¶¶ 14-15. However, Patterson was later served with two orders of protection and was charged with four misdemeanors related to the incident. *Id*. at 4-5, ¶¶ 19, 23-24. Patterson alleges that because he was a member of the legislature at the time these events transpired, he was granted immunity from civil process while the legislature was in session. *Id*. at ¶¶ 18, 25.  Thus, Patterson alleges Defendants violated his civil rights when they served him with civil process and charged him with four misdemeanors while he was serving as an active member of the Arizona Legislature.

In lieu of filing an answer, Defendants filed their respective motions to dismiss.

## II.   Legal Standard

1    Pursuant to Rule 12(b)(6), the Court may grant a motion to dismiss when the

2    plaintiff fails to state a claim upon which relief can be granted.

3    A complaint must contain a "short and plain statement of the grounds for the

4    court's jurisdiction," a "short and plain statement of the claim showing that the pleader is

5    entitled to relief," and "a demand for the relief sought." Fed. R. Civ. P. 8(a). While Rule

6    8 does not demand factual allegations, "it demands more than an unadorned, the-

7    defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949

8    (2009). "Threadbare recitals of a cause of action, supported by mere conclusory

9    statements, do not suffice." *Id*.

10    To survive a motion to dismiss under Rule 12(b)(6), a pleading must allege facts

11    sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v.*

12    *Twombly*, 550 U.S. 544, 555 (2007). A claim must be plausible, allowing the court to

13    draw the reasonable inference that the defendant is liable for the conduct alleged.

14    *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a

15    'probability requirement,' but it asks for more than a sheer possibility that a defendant

16    has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557). "Where a complaint

17    pleads facts that are merely consistent with a defendant's liability, it stops short of the

18    line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

19    The Court must view the complaint in the light most favorable to the nonmoving

20    party, with every doubt resolved on his behalf, and with that party's allegations taken as

21    true. *See Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990). Generally, the

22    court only considers the face of the complaint when deciding a motion under Rule

23    12(b)(6). *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.

24    2002).

25    **III.   Discussion**

26    *a. Defendants Pima County Sheriff's Office and Sheriff Clarence Dupnik's*

27    *Motion to Dismiss*

28    Defendants Pima County Sheriff's Office and Sheriff Clarence Dupnik request

that the Court dismiss them as parties pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 8). Defendants argue Plaintiff's complaint fails to state a claim for relief because Defendants are not parties who may properly be sued in this action. Specifically, Defendants argue that Pima County Sheriff's Office is a non-jural entity incapable of being sued, that Plaintiff has failed to allege Sheriff Dupnik was personally involved in or caused the alleged constitutional violation, and that Plaintiff has failed to identify an official municipal policy allegedly causing the constitutional violation.

Plaintiff devotes the majority of his response (Doc. 18)[1] to discussing the Rule 8 pleading standard and reiterating his claims that the Arizona constitution forbids service of process on members of the legislature while the legislature is in session. Plaintiff fails to specifically address Defendants' arguments that the Sheriff's Office and Sheriff Dupnik, in his individual capacity, should be dismissed as parties. *See* LRCiv 7.2(i).

### i. Dismissal of Pima County Sheriff's Office

Whether a government entity has the capacity to be sued is determined by state law. Fed. R. Civ. P. 17(b)(3). "Governmental entities have no inherent power and possess only those powers and duties delegated to them by their enabling statutes." *Braillard v. Maricopa Co.*, 224 Ariz. 481, 487 (2010). "In Arizona, a government entity may be sued only if the legislature has given that entity the power to be sued." *Payne v. Arpaio*, 2009 WL 3756679, *3 (D. Ariz.). In *Braillard*, the court found that "[a]lthough A.R.S. § 11-201(A)(1) provides that counties have the power to sue and be sued through their board

---

[1] Plaintiff's Responses (Docs. 18 and 19) to both motions to dismiss were filed late, thus the District Court could strike the responses and summarily grant both motions due to Plaintiff's failure to timely file his responsive memorandums. Pursuant to the Local Rules, responsive memorandums to Category One motions are due 17 days (14 days plus 3 days mailing time) after the motion is filed. (LRCiv App. A). The first motion to dismiss was filed February 28, 2014, thus Plaintiff's response was due March 17, 2014. However, Plaintiff did not file his response until April 28, 2014. The second motion to dismiss was filed March 19, 2014, thus Plaintiff's response was due April 7, 2014. However, Plaintiff did not file his response until April 27, 2014. Plaintiff did not file a motion for extension of time to file his responses or a motion for permission to late-file the responses. A plaintiff's failure to oppose a motion is deemed to be his consent to it being granted. LRCiv 7.2(i). However, should the District Court wish to reach the merits of Plaintiff's arguments despite his untimely filings, the Magistrate Judge will address the issues Plaintiff raises herein.

of supervisors, no Arizona statute confers such power on MCSO [Maricopa County Sheriff's Office] as a separate legal entity." 224 Ariz. At 487. The court further noted that "there is a consensus among Arizona federal decisions that city police departments generally are nonjural entities." *Id*. Accordingly, a number of Arizona court decisions have found that sheriff's offices are non-jural entities. *See Payne*, 2009 WL 3756679 at *8 ("the dispositive factor here is the Arizona legislature's failure to confer separate jural status on [MCSO]"); *Braillard*, 224 Ariz. at 487; *see also Gotbaum v. City of Phoenix*, 617 F.Supp.2d 878, 886 (D. Ariz. 2008) (finding Phoenix Police Department is not a separate entity for purposes of suit); *Duqmaq v. Pima Cnty. Sheriff's Dep't*, 2012 WL 1605888 (D. Ariz. May 8, 2012) (dismissing Pima County Sheriff's Department as non-jural entity); *Phillips v. Salt River Police Dep't*, 2013 WL 1797340 (D. Ariz. Apr. 29, 2013) (Pima and Maricopa County Sherriff's Departments are non-jural); *Tarantino v. Dupnik*, 2012 WL 1718893 (D. Ariz. May 15, 2012) (noting Pima County Sheriff's Department is non-jural entity).

Based on the lack of an Arizona statute granting sheriff's offices the capacity to sue and be sued, prior court decisions dismissing sheriff's departments as non-jural entities, and Plaintiff's failure to address Defendants' argument on this point (*see* LRCiv 7.2(i)), the undersigned recommends dismissal of the Pima County Sheriff's Office as a party to this action.

ii.   Dismissal of Sheriff Dupnik (individual capacity)

"[T]o establish *personal* liability in a § 1983 action, [the plaintiff must] show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Further, "[u]nder Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989). In order for a supervisor to be liable for the actions of his employees, there must be "either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."

*Id.* at 646. Thus, "a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the constitution." *Iqbal*, 556 U.S. at 675.

As Defendants note in their motion, Plaintiff's complaint makes a general allegation that Dupnik is "responsible for the operation of the Pima County Sheriff's Department and for all officers/deputies," but the complaint does not allege that Dupnik was personally involved in the incident or that there is some causal connection between Dupnik's alleged wrongful conduct and the alleged violation of Plaintiff's constitutional rights. (Doc. 8 at 4, quoting Doc. 1 at 3, ¶ 6); *see Hansen*, 885 F.2d at 646 ("Even from the point of view most favorable to [plaintiff], there is no allegation that the police chief was personally involved in the incident."); *see also Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (holding that allegation of a specific policy for which a personal-capacity defendant is responsible is necessary to survive at 12(b)(6) motion). Accordingly, Plaintiff's complaint fails to meet the standard set forth in *Hansen*, and fails to plausibly allege that Dupnik is personally liable for the actions of his employees.

Based on the deficiencies in Plaintiff's complaint, as well Plaintiff's failure to address Defendants' argument on this point (*see* LRCiv 7.2(i)), the undersigned recommends dismissal of Dupnik in his personal capacity as a party to this action.

### iii.  Dismissal of Sheriff Dupnik (official capacity)

Official-capacity suits against an officer are generally treated as "an action against an entity of which an officer is an agent." *Kentucky*, 473 U.S. at 165 (quoting *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). Further, "Section 1983 suits against local governments alleging constitutional rights violations by government officials cannot rely solely on respondeat superior liability." *AE ex. rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). "Instead, plaintiffs must establish that the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation [they] suffered." *Id*. (internal quotations and citation omitted) (alteration in original); *see also Kentucky*, 473 U.S. at

166 ("in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law") (quoting *Monell*, 436 U.S. at 694); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) ("The 'official policy' requirement [is] intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually liable.") (emphasis in original). A "bare allegation that government officials' conduct conformed to some unidentified government policy or custom" is insufficient to state an official-capacity claim. *Hernandez*, 666 F.3d at 637 (conclusory allegation that defendant county had policies, customs, or practices relating to the custody and care of dependent minors failed to state a claim).

Plaintiff asserts that "[l]ocal governing bodies … can be sued directly under §1983 for monetary … relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." (Doc. 18 at 3-4, quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)) (alterations in original). However, Plaintiff's complaint fails to identify any policy or regulation implemented by the sheriff's office that lead to the alleged violation of Plaintiff's rights. Plaintiff merely makes the general claim in his response that, to the best of his knowledge, "Defendants Pima County Sheriff's Department and Sheriff Clarence Dupnik have a policy or procedure in place that allowed individual deputies to unconstitutionally serve Plaintiff as a member of the Arizona Legislature while the legislator was in session." (Doc. 18 at 4). Even if this statement did appear in Plaintiff's complaint, as the court noted in *Hernandez*, this kind of bare allegation is insufficient to state an official-capacity claim. *See also Nevels v. Maricopa County*, 2012 WL 1623217, * 3 (D. Ariz. May 9, 2012) (quoting *Hernandez*, and finding the plaintiff's complaint insufficient where it failed to "identify any specific policies or customs … or explain how those policies led to the deprivation of his constitutional rights."); *Fernandez v. City of Phoenix*, 2012 WL 2343621, *2 (D. Ariz. June 30, 2012) ("Plaintiffs have not alleged any facts concerning

the City's particular policies, practices or customs surrounding excessive force. Their non-specific allegation is not sufficient to survive a motion to dismiss."); *Muhammed v. Pima County Sheriff's Dept.*, 2012 WL 1605888, * 3 (D. Ariz. May 8, 2012) ("to prevail on § 1983 claim … Plaintiff must show a formal departmental policy or a longstanding practice causing the alleged civil rights violation.").

Further, the Magistrate Judge finds Plaintiff's argument that his official-capacity claim against Dupnik should be allowed to proceed so that he may undertake discovery regarding the two Doe Defendants unpersuasive. Plaintiff notes that these two individuals are currently unknown to him, but that he believes their identities will become known during the discovery process. (Doc. 18 at 4). While Plaintiff may certainly undertake discovery to learn the identities of the officers, there is no reason that Dupnik must remain as a party in order for Plaintiff to discover the Defendant Does. Moreover, as Defendants point out, this information is likely already available to Plaintiff through either a public records request or by obtaining a copy of the affidavit of service. (Doc. 20 at 4). In any event, the undersigned concludes that Plaintiff will sufficiently be able to discover the identities of the Doe Defendants without Dupnik being sued in his official capacity.

Based on the deficiencies in Plaintiff's complaint and its failure to identify a specific government policy or custom that allegedly resulted in the denial of Plaintiff's constitutional rights, the undersigned recommends dismissal of Dupnik in his official capacity as a party to this action.

### b. Defendants City of Tucson and Michael Rankin's Motion to Dismiss

Defendants City of Tucson and Michael Rankin request the Court dismiss Plaintiff's Complaint against them pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 9). Defendants argue Plaintiff's complaint fails to state a claim for relief because Defendant Rankin has absolute prosecutorial immunity. Defendants also argue Plaintiff has not stated a proper claim under 42 U.S.C. § 1983 because Plaintiff has (1) "fail[ed] to identify any unconstitutional custom or policy of the City of Tucson or of Rankin … that

1    can be brought under Section 1983[;]" (2) that there is no § 1983 cause of action "for an

2    alleged violation of a right provided in the Arizona Constitution[;]" and (3) that § 1983

3    "is not a source of substantive rights." (Doc. 9 at 4-6).

4         Plaintiff's response focuses only on the issue of Defendant Rankin's immunity,[2]

5    arguing that Rankin did not have colorable authority to file charges against Plaintiff while

6    he was an active member of the legislature. (Doc. 16 at 2-3).

7                              i.  Prosecutorial Immunity

8         "Prosecutors performing their official prosecutorial functions are entitled to

9    absolute immunity against constitutional torts." *Lacey v. Maricopa County*, 693 F.3d 896,

10   912 (9th Cir. 2012); *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004)

11   (prosecutors "functioning in their official capacities" are entitled to absolute immunity).

12   "A state prosecutor is entitled to absolute immunity from liability under § 1983 for

13   violating a person's federal constitutional rights when he or she engages in activities

14   'intimately associated with the judicial phase of the criminal process.'" *Broam v. Bogan*,

15   320 F.3d 1023, 1028 (9th Cir. 2003) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430

16   (1976)). "A prosecutor is granted only qualified immunity, however, if he or she is

17   performing investigatory or administrative functions, or is essentially functioning as a

18   police officer or detective." *Broam*, 320 F.3d at 1028. Thus, as long as the prosecutor's

19   action is part of the judicial process, he is entitled to absolute immunity. *Id.* at 1029.

20        Though "[d]etermining what functions are prosecutorial is an inexact science[, t]he

21   functions are those 'intimately associated with the judicial phase of the criminal process,'

22   in which the prosecutor is acting as 'an officer of the court.'" *Lacey*, 693 F.3d at 912

23   (quoting *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009)). "Absolute immunity also

24   protects those functions in which the prosecutor acts as an 'advocate for the State,' even

25   if they 'involve actions preliminary to the initiation of a prosecution and actions apart

26   from the courtroom.'" *Id.* (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)). "Functions

27

28        [2] Plaintiff's conclusion specifically asks the Court only "to allow the action against Defendant Rankin to proceed," suggesting Plaintiff concedes to dismissal of Defendant City of Tucson. (Doc. 16 at 3).

1   for which absolute prosecutorial immunity have been granted include the lawyerly

2   functions of organizing and analyzing evidence and law, and then presenting evidence

3   and analysis to the courts and grand juries on behalf of the government; they also include

4   internal decisions and processes that determine how those functions will be carried out."

5   *Id*. at 913; *see e.g. Kalina v. Fletcher*, 522 U.S. 118, 129 (1997) (prosecutor's preparation

6   and filing of an information and motion for an arrest warrant are protected by absolute

7   immunity); *Imbler*, 424 U.S. at 430 (absolute immunity for initiating a prosecution and

8   presenting the state's case); *Roe v. City & County of San Francisco*, 109 F.3d 578, 584

9   (9th Cir. 1997) ("prosecutor's professional evaluation of the evidence assembled by the

10  police is entitled to absolute immunity"); *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n. 5

11  (1993) (absolute immunity shields "prosecutor's decision to bring an indictment, whether

12  he has probable cause or not"). Further, "[t]he intent of the prosecutor when performing

13  prosecutorial acts plays no role in the immunity inquiry." *McCarthy v. Mayo*, 827 F.2d

14  1310, 1315 (9th Cir. 1987).

15          Here, Plaintiff argues that he should not have been charged with the four

16  misdemeanor crimes related to the domestic violence incident. However, the charging

17  decision is one of the prosecutor's main responsibilities, and certainly falls within the

18  scope of "official prosecutorial functions." *Lacey*, 693 F.3d at 912; *see also Hansen v.*

19  *Black*, 885 F.2d 642, 464 (9th Cir. 1989) (absolute prosecutorial immunity for charging

20  decision). The fact that Plaintiff was later found not guilty is irrelevant to the fact that,

21  when Rankin made the decision to file charges, he was engaged in one of the core

22  activities "'intimately associated with the judicial phase of the criminal process.'" *Broam*,

23  320 F.3d at 1028 (quoting *Imbler*, 424 U.S. at 430).

24          Plaintiff also argues the applicable standard for prosecutorial immunity is based on

25  a case from the Second Circuit, which uses an "acting under colorable authority" test.

26  *Bernard v. Co of Suffolk*, 356 F.3d 495 (2nd Cir. 2004). In that case, the court stated that

27  "as long as a prosecutor acts with colorable authority, absolute immunity shields his

28  performance of advocative functions regardless of motivation." *Id*. at 498. Thus, the

1    Second Circuit's test focuses on "whether the *acts* at issue are beyond the prosecutor's

2    authority." *Id*. at 504 (emphasis in original).

3        Plaintiff uses *Bernard* to reason that, because Rankin knew Plaintiff was a state

4    legislator and that the legislature was in session, and because the Arizona Constitution

5    grants legislators privilege from arrest, "Rankin did not have colorable authority" to file

6    charges against Plaintiff. (Doc. 16 at 3).  However, the court in *Bernard* also noted that

7    "if an act is within a prosecutor's jurisdiction as a judicial officer, absolute immunity

8    attaches to his actions, regardless of his motivation." 356 F.3d at 504 (internal quotations

9    and citation omitted). Not only has there been no allegation that Rankin acted on

10   improper motivation, but certainly it is within Rankin's prosecutorial jurisdiction to file

11   criminal charges when it appears someone has violated the law. Furthermore, Plaintiff

12   fails to point out that *Bernard* favorably cites the Ninth Circuit on the issue of intent and

13   immunity:

14           In [*Ashelman v. Pope*, 793 F.2d 1072 (9th Cir. 1986)], the
             court ruled that "[i]ntent should play no role in the immunity
15           analysis," and that even self-interested prosecutors are
             entitled to absolute immunity because the initiation of
16           criminal proceedings is conduct well within the advocative
             function.
17

18   *Bernard*, 356 F.3d at 505 (quoting *Ashelman*, 793 F.2d at 1078).

19       Thus, Plaintiff's reliance on a Second Circuit case that applies a wholly different

20   standard than that applied by the Ninth Circuit is misplaced. There has been no allegation

21   of improper motive by Rankin, and even if there was, motive plays no role in the

22   immunity analysis when the prosecutor is acting within the scope of his prosecutorial

23   duties (under both the Second and Ninth Circuit standards). Moreover, the "colorable

24   authority" test has no place in the courts of our circuit, and it does not apply to the case at

25   hand.

26       Further, even if the colorable authority test applied here, the legislative immunity

27   statute Plaintiff cites specifically excludes immunity for certain categories of crimes:

28   "Members of the legislature shall be privileged from arrest in all cases except treason,

felony, and breach of the peace, and they shall not be subject to any civil process during the session of the legislature… "Ariz. Const. art. IV, pt. 2, § 6. Here, the Court lacks specific information as to the crimes Plaintiff was charged with, other than the fact that they were related to the domestic violence incident at Plaintiff's home. Under Arizona law, "domestic violence" includes crimes ranging from violent felonies against children to such crimes as endangerment, threatening or intimidating, assault, aggravated assault, custodial interference, unlawful imprisonment, kidnapping, trespass, disorderly conduct, and criminal damage. Ariz.Rev.Stat.Ann. § 13-3601. While there is no specific definition of "breach of the peace" in the Arizona Criminal Code or the Arizona Constitution, the term has "long been understood to mean disruption of public order by acts that are themselves violent or that tend to incite others to violence." *State v. Starsky*, 106 Ariz. 329, 331 (1970); *see also State ex rel. Williams v. Superior Court In & For Pima Cnty.*, 20 Ariz. App. 282, 283 (1973) ("A 'disturbance of the peace' is a disturbance of public tranquility or order and may be created by any act which molests inhabitants in the enjoyment of peace and quiet or excites disquietude or fear."). Moreover, the Ninth Circuit has noted that "the Supreme Court has read the 'breach of the peace' exception to federal legislators' immunity from arrest to encompass 'all criminal offenses.'" *Picray v. Sealock*, 138 F.3d 767, 771 (9th Cir. 1998) (quoting *Williamson v. United States*, 207 U.S. 425, 446 (1908)).

Accordingly, the Magistrate Judge recommends that even if Rankin was not entitled to prosecutorial immunity, which the undersigned finds he is, and even if the Second Circuit's colorable authority test did apply, that test is met here because the charges brought against Plaintiff fall under the legislative immunity statute's exception for crimes related to "breach of the peace." Accordingly, the undersigned recommends dismissal of Rankin as a party to this action.

ii.  Failure to Identify A Specific Policy or Custom

As discussed above in section III. a. iii., to maintain a § 1983 action against a local government, a "plaintiff[] must establish that the local government had a deliberate

policy, custom, or practice that was the moving force behind the constitutional violation [he] suffered." *AE ex. rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (internal quotations and citation omitted). Although Plaintiff's complaint makes a general allegation that "[t]he constitutional violations and torts committed by the Defendants resulted from policies and customs of the City of Tucson," Plaintiff fails to identify any such policy or custom that caused the alleged deprivation of his rights under § 1983.[3] (Doc. 1 at 2, ¶5). This type of bare allegation is insufficient to state a § 1983 claim against Rankin or the City of Tucson.[4] *See Hernandez*, 666 F.3d at 637 (conclusory allegation that defendant county had policies, customs, or practices relating to the custody and care of dependent minors failed to state a claim); s*ee also Nevels,* 2012 WL 1623217 at * 3 (quoting *Hernandez*, and finding the plaintiff's complaint insufficient where it failed to "identify any specific policies or customs … or explain how those policies led to the deprivation of his constitutional rights."); *Fernandez,* 2012 WL 2343621 at *2 ("Plaintiffs have not alleged any facts concerning the City's particular policies, practices or customs surrounding excessive force. Their non-specific allegation is not sufficient to

---

[3] Section 1983 provides a civil remedy for parties deprived of constitutional rights by officials acting under color of state law. 42 U.S.C. § 1983. Thus, in order to state a valid § 1983 claim, "a plaintiff must show that he or she has been deprived of a right secured by the Constitution and … laws of the United States and that the deprivation was under color of state law." *Broam*, 320 F.3d at 1028 (internal quotations and citations omitted). "Section 1983 is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Id.* (internal quotations and citations omitted).

Plaintiff seeks relief under § 1983 based on an alleged violation of the Arizona Constitution— the right of members of the legislature to be exempt from arrest while the legislature is in session. Ariz. Const. art. IV, pt. 2, § 6. Section 1983 only applies to rights secured by the United States Constitution; thus, Plaintiff cannot seek relief for violation of an Arizona Constitution provision. Further, although Count One of Plaintiff's complaint seeks § 1983 damages, Plaintiff does not name any federal constitutional rights that Defendants allegedly violated as the basis for these damages. Accordingly, Count One could also be dismissed for this reason as well.

[4] Further, a bare and conclusory allegation fails to comply with the Rule 8 pleading standard set forth by the Supreme Court in *Iqbal* and *Twombly*. *See Iqbal*, 129 S.Ct. at 1949 ("Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions").

survive a motion to dismiss.").

Because the complaint fails to identify a specific policy or custom of Rankin or the City of Tucson that led to the alleged deprivation of Plaintiff's constitutional rights, the undersigned recommends dismissal the lawsuit against Defendants Rankin and City of Tucson. The Court also notes Plaintiff's lack of opposition to Defendants' arguments on this point may be deemed consent to granting Defendants' motion. *See* LRCiv 7.2(i).

**IV.     Recommendation**

The Magistrate Judge RECOMMENDS that the District Court GRANT Defendants Pima County Sheriff's Office and Sheriff Clarence Dupnik's Motion to Dismiss them as parties. (Doc. 8).

The Magistrate Judge further RECOMMENDS that the District Court GRANT Defendants City of Tucson and Michael Rankin's Motion to Dismiss the claims against them. (Doc. 9).

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Fed. R. Civ. P. 72(b). No reply to any response shall be filed. *See id*. If objections are not timely filed, then the parties' rights to de novo review by the District Court may be deemed waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 7th day of August, 2014.

Eric J. Markovich
United States Magistrate Judge

- 14 -